FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -7  AM 10: 51

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SUSAN DOWNEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-2593-SS** |
| **RODNEY J. STRAIN, JR., SHERIFF**<br>**OF SAINT TAMMANY PARISH** | |

## ORDER

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Rec. doc. 26)

**GRANTED IN PART AND DENIED IN PART**

Before the undersigned is the motion of the defendant, Rodney J. Strain, Jr., in his capacity as Sheriff of St. Tammany Parish ("Sheriff Strain'), for partial summary judgment on the plaintiff's claims for violation of the Family & Medical Leave Act, 29 U.S.C. 2611 ("FMLA").  The parties consented to trial before a Magistrate Judge.  Rec. doc. 8.  On September 20, 2004, the plaintiff, Susan Downey ("Downey"), filed a complaint against Sheriff Strain.  She alleges causes of action pursuant to the FMLA, the Americans with Disabilities Act, 42 U.S.C. § 12101, and the Louisiana Employment Discrimination Law, La. Rev. Stat. Ann. § 23:323.  Sheriff Strain seeks partial summary judgment on the FLMA claims.

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No_____

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts,"

Matsushita, 106 S.Ct. at 1356, by "conclusory allegations,"   Lujan, 110 S. Ct. at 3180, by

"unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of

evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).  The court resolves factual

controversies in favor of the nonmoving party, but only when there is an actual controversy, that is,

when both parties have submitted evidence of contradictory facts.  The court does not, however, in

the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

See Lujan, 110 S. Ct. at 3188.   Summary judgment is appropriate in any case "where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993).  If the nonmoving party

fails to meet this burden, the motion for summary judgment must be granted.  See Evans v. City of

Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

SHERIFF STRAIN'S LEAVE POLICIES

During 2002 and 2003, Sheriff Strain's policies provided employees with four types of fully

paid leave.  The first was personal time.  It provided each employee with 48 hours per calendar year,

which was not subject to accrual year to year.  The second was vacation time.  For employees with

at least ten years of service, but less than fifteen, it provided 120 hours per work year and for

employees with more than 15 years of service, it provided 160 hours per work year. Employees were

not permitted to accrue vacation pay.  In 2002 Downey was entitled to 120 hours of vacation pay.

In 2003 she was entitled to 160 hours of vacation pay.  The third type of paid leave was extended

illness bank ("EIB") time or sick leave.  EIB leave was accrued at the rate of 4.62 hours per two

week pay period up to a maximum of 480 hours.  The fourth type was occupational injury time

("OIT"), whereby each employee was granted 240 hours in connection with a work-related injury or illness, which also was not subject to accrual. Rec. doc. 50 at para. 3.[1]

Downey's leave record demonstrates that Sheriff Strain charged her with eight hours of leave per day and that there were five working days in a normal five day work week. Rec. doc. 50, Downey's leave record for 2003. Thus, Sheriff Strain's leave policies provided an employee with: (1) personal time - 48 hours (6 working days); (2) vacation time: (a) either 120 hours (15 working days or three normal work weeks); or (b) 160 hours (20 working days or four normal work weeks); (3) EIB leave of up to 480 hours (60 working days or twelve normal work weeks); and (4) 240 hours of OIT leave (30 working days or six normal work weeks).

Each employee could take up to a total of 480 hours (60 working days or twelve normal work weeks) of FMLA leave, during any 365 day period for a serious health condition that made the employee unable to perform the employee's job. Sheriff Strain's policies provided that, "[FMLA leave] is without pay. However, employees must use any accumulated paid leave such as paid sick leave . . . and/or vacation leave." Schlesinger Aff., Exhibit A at para. 8. The effect of this provision is that FMLA leave runs concurrently with the various types of paid leave available to an employee. Schlesinger Aff. at first para. 8. The Sheriff's policy further provided that an employee who failed or was unable to return to work after exhausting all available FMLA leave would be deemed to have terminated his or her employment. Schlesinger Aff., Exhibit A at para. 11.

---

[1] Rec. doc. 50 is the Supplemental Affidavit of Captain Donna Schlesinger. Captain Schlesinger is the director of Sheriff Strain's Human Resource Department. Sheriff Strain submitted two affidavits from Captain Schlesinger. The first affidavit was submitted with the motion (Rec. doc. 26). Hereafter it is referred to as "Schlesinger Aff." The second or supplement affidavit was submitted in response to the court's order of August 5, 2005 (Rec. doc. 45). It is referred to by its number in the record (Rec. doc. 50).

Under Sheriff Strain's policies the following outcomes were possible when an employee was placed on FMLA leave for 480 hours during any 365 day period:  (1) if there was sufficient paid leave available, the employee could be fully compensated for the entire 480 hours; (2) if there was less then 480 hours of paid leave available, the employee would receive compensation for only that portion of the 480 hours for which paid leave was available; or (3) if there was no paid leave available, he or she would receive no compensation for the 480 hours.  Under the first outcome, it was possible for an employee to exhaust the 480 hours of FMLA leave and still have accrued leave with pay.  According to Sheriff Strain, this was the position in which Downey found herself. Notwithstanding the availability of paid leave, an employee was deemed terminated once he or she exhausted her FMLA leave during any 365 day period.

## UNDISPUTED FACTS

On November 15, 1988, Downey began employment in the corrections division of the St. Tammany Parish Sheriff's Office.  In August 1997, she was transferred to the crime lab at her request where she worked as a technician.  On August 18, 2000, Downey sustained a work related injury to her left knee.  Rec. doc. 50, attachment.  At an unknown time Downey sustained an injury to her left shoulder.[2]  During 2002 Downey did not sustain any work related injuries.  Rec. doc. 50 at para. 5.

In 2002, Downey advised Sheriff Strain's Human Resources Department that she planned to have surgeries on her left knee and shoulder.  Id. at para. 2.  On November 7, 2002, surgery was

---

[2]  There is no evidence that the injury to the left shoulder was work related.

performed on her left knee.  On December 29, 2002, Sheriff Strain sent Downey a notice that her leave would be treated as FMLA leave effective December 29, 2002.[3]  Schlesinger Aff. at para. 2 and Rec. doc. 31, Exhibit B.[4]

In 2002, Downey was on leave from her responsibilities in the crime lab from November 7, 2002 through December 31, 2002.  All of this was paid leave.  Only 16 hours or two of the days, December 30 and 31, were treated by Sheriff Strain as FMLA leave.  Rec. doc. 50, Downey's leave record for 2002.

From January 1, 2003 through January 23, 2003, Downey was on paid leave.  Rec. doc. 50, Downey's leave record for 2003.  On January 23, 2003, surgery was performed on her left shoulder.  Schlesinger Aff. at para. 3.  On March 17, 2003, Downey's surgeon released her to return to sedentary work and she did return to work on that date.  Id. at para. 6.  From January 23, 2003 through March 16, 2003 Downey was on paid leave.  From December 29, 2002 through March 17, 2003, Sheriff Strain charged Downey with 424 hours (53 days) of FMLA leave.  Id. at para. 6.  On May 9, 2003, Downey's doctor released her from the sedentary duty restriction and cleared her to resume her full duties in the crime lab.  Id. at para. 7.  At this point Downey had only 56 hours (seven days) of FMLA leave available through December 28, 2003 (the last day of the 365 day

---

[3] Sheriff Strain contends that the notice should have been sent prior to November 7, 2002 so that the FMLA leave would begin with the first surgery on November 7, 2002.  Schlesinger Aff. at para. 14.  If so, Downey would have exhausted her 480 hours of FLMA leave in February 2003 and more than a month before she returned to work on March 17, 2003.  The Sheriff will be deemed to have commenced the FMLA leave on December 29, 2002, as per his notice to the plaintiff.

[4] In addition to the affidavit from Captain Schlesinger, in which she attested that the notice was sent to Downey on or about December 29, 2002.  Sheriff Strain also submitted:  (a) a copy of the letter, dated December 29, 2002, that stated that FLMA leave was to begin on that date; and (b) information confirming that mail relative to the FLMA was postmarked to Downey on or about January 2, 2003.  Rec. doc. 31, exhibit B.

FMLA period which began on December 29, 2002).

On June 18, 2003, Downey re-injured her left knee in a work related accident. Id. at para 8 and Rec. doc. 50, attachment.  From June 18 through July 8, 2003, Downey did not take any leave except for one hour of personal time.  On July 9, 2003, Sheriff Strain charged her with one day of EIB leave, which was also treated as 8 hours of FMLA leave.  Rec. doc. 50, Downey's leave record for 2003.  From July 10 through July 29, 2003, she was charged with one day of vacation leave, which was not charged as FMLA leave.  Id.  Except for the leave noted, Downey performed her duties in the crime lab from June 18, 2003 through July 28, 2003.

On July 30, 2003, Downey missed work for preparation for surgery.  Schlesinger Aff. at para. 9.  On July 31, 2003, surgery was performed on her left knee.  On October 6, 2003, Downey's doctor cleared her to return to her full duties and she began working in the corrections division instead of the crime lab.  Id. at paras. 10 and 13.

Sheriff Strain also charged Downey with FMLA leave for the period from July 30, 2003 through October 3, 2003.  As of August 7, 2003, Downey had exhausted the 480 hours of FMLA leave that was available for the twelve months beginning on December 29, 2002.  Id. at para. 9.  Even though Downey exhausted her FMLA leave as of August 7, 2003, Sheriff Strain continued to record her as using FMLA leave through October 3, 2003.  Because of available OIT leave, EIB leave, personal days and vacation days, Downey was on paid leave from July 30, 2003 through October 3, 2003.  Rec. doc. 50, Downey's leave record for 2003.

As of June 23, 2005, Downey remained in the employ of Sheriff Strain assigned in the corrections division.  Schlesinger Aff. at para. 13.

<u>DOWNEY'S FACT ISSUES</u>

Downey submitted an affidavit. Rec. doc. 48. It does not comply with Fed. R. Civ. P. 56(e). An affidavit shall "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." <u>Id</u>. The affidavit merely states that all of the allegations of fact in the memorandum are true to the best of her knowledge, information and belief. Statements made on information and belief do not constitute proper summary judgment evidence under Rule 56(e). <u>Bolen v. Dengel</u>, 340 F.3d 300, 313 (5th Cir. 2003). An affidavit that simply incorporates all allegations in a memorandum by reference does not set forth facts.

Assuming <u>arguendo</u> that the statements of fact in Downey's opposition must be addressed, she disputes that she was informed that her leave after December 29, 2002 would be charged as FMLA leave. Rec. doc. 28 at p. 2. She did not submit any evidence to contradict Sheriff Strain's evidence that a FMLA notice was sent to her on December 29, 2002. <u>See</u> Rec. doc. 31, exhibit B. A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Kee</u>, 247 F.3d at 210 (5th Cir. 2001). This burden is not satisfied by conclusory allegations or unsubstantiated assertions. <u>Lujan</u>, 110 S. Ct. at 3180; and <u>Hopper</u>, 16 F.3d 92 (5th Cir.1994). There is no genuine issue of fact concerning the December 29, 2002 FMLA notice.

Downey contends that she was told on July 25, 2003 that she would be re-assigned to the corrections division prior to her surgery on July 31, 2003 and prior to the expiration of her FMLA leave. Rec. doc. 28 at pp. 4-5. It is undisputed that after the June 18, 2003 knee injury, Downey

worked in the crime lab until at least Friday, July 25, 2003.  Captain Schlesinger states that Downey

went on leave on Wednesday, July 30, 2003 and remained out until October 6, 2003.  Schlesinger

Aff. at paras. 9 and 10.  Captain Schlesinger's affidavits are silent on exactly when Sheriff Strain

realigned his staff, when Downey was reassigned to the jail, and when she was told of the

reassignment.  Sheriff Strain's records, however, demonstrate that the reassignment was not made

until October 8, 2003.  Rec. doc. 31, exhibits C and D.  The effective date of the reassignment was

September 30, 2003.  Id.  Downey's unsupported assertion as to a conversation on July 25, 2005 is

not sufficient to raise a genuine issue of fact as to when she was reassigned to the corrections

division.

The court therefore finds that Downey was sent the December 29 notice of FMLA leave and

that plaintiff was reassigned to the corrections department on October 8, 2003.

<u>DOWNEY'S FMLA CLAIMS</u>

Downey contends that Sheriff Strain violated the FMLA by failing to reinstate her to work

in the crime lab and that this was an adverse employment action because she lost:  (1) the use of a

vehicle; (2) overtime work; and (3) off duty details.  Rec. doc. 1 at pp. 4-5.  In her opposition to the

motion for summary judgment, Downey identified the following additional FMLA claims:  (1)

Sheriff Strain failed to inform her of her FLMA rights and obligations in that she was not told how

the occupational injury and FLMA policies were both implicated; and (2) the second absence cannot

be treated as FMLA leave because she was not given notice that the leave would be counted as

9

FMLA leave.[5]  Rec. doc. 28.

1.      Failure to reinstate.

Pursuant to the FMLA, employers may not penalize employees after a qualifying FMLA absence.  Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999).  Downey claims that Sheriff Strain failed to reinstate her to the crime lab position in violation of his FMLA obligations. He responds that because she did not return to work immediately upon exhaustion of her 480 hours of FMLA leave, she was not entitled to reinstatement.  Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 768 (5th Cir. 2001)("If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires.").  See also Felder v. Winn-Dixie, 2003 WL 22966364, *6 (E.D.La.)(Wilkinson, M.J.)("Because plaintiff did not return from her leave within 12 weeks, she has no right to reinstatement or any other remedy.").  Downey does not dispute that she was on leave for more than 480 hours between December 29, 2002 and October 6, 2003. When Sheriff Strain reassigned her in October 2003, he did not violate his prescriptive obligation to restore Downey to the same position after a qualifying FMLA absence.

2.      Failure to inform Downey that OIT leave and FMLA leave run concurrently.

Downey contends that the FMLA required Sheriff Strain to explain how the policies for OIT and FMLA operated when the employee's health condition was caused by a work related injury.[6]

---

[5] Downey also contends that Sheriff Strain interfered with her FMLA rights by transferring to her to the corrections division prior to the expiration of her 480 hours of FMLA leave.  The undisputed facts demonstrate that the reassignment did not occur until after she returned to work on October 6, 2003, which was nearly two months after the expiration of her 480 hours of FMLA leave.

[6] Even if the leave policies provided that an employee could not be placed on FLMA leave until after she had exhausted her OIT leave, Downey would still have exhausted her FMLA leave prior to October 3, 2003.

10

She contends that the OIT policy provided for 240 hours of paid leave for a work related injury followed by exhaustion of the accrued EIB and vacation leave.  She contends that she should have received the full amount of the OIT, EIB and vacation leave without regard to the limitation in the FMLA leave.

Sheriff Strain had a statutory right to require an employee to substitute accrued paid leave for the 480 hours of FMLA leave and to have the two leaves run concurrently.  29 U.S.C. § 2612(d)(2)(A) and (B); and see McGregor v. Autozone, Inc., 180 F.3d 1305, 1307 (8th Cir. 1999). Sheriff Strain's FMLA policies notified Downey that FMLA leave would run concurrently with paid leave, and that once the FLMA leave was exhausted she would be deemed to have terminated her employment.  Schlesinger Aff., Exhibit A at paras. 8 and 11.  There is no merit to Downey's contention that she was not informed that the paid OIT leave would run concurrently with the FMLA leave.

3.    The second absence cannot be counted as FLMA leave.

Downey makes two arguments as to why the second absence cannot be counted as FMLA leave.  Both arguments relate to Sheriff Strain's failure to notify her that the second absence would count as FMLA leave.  The first argument relies on the requirement in the FMLA regulations that notice be given before any leave may be counted as FMLA leave.  This argument was resolved against her in Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 122 S.Ct.1155 (2002).  In Ragsdale, the plaintiff was not notified that twelve weeks of her absence would be counted as FMLA leave.  She contended that where such notice was not provided, the regulations required the employer to give her an additional twelve weeks of leave.  The Supreme Court held that the penalty imposed

11

by the regulations for failure to provide the notice was invalid.  Id. at 1165.  In McGregor v. Autozone, 180 F.3d 1305, 1308 (11th Cir. 1999), the regulations that required an employer to notify an employee that an absence was being counted as FMLA leave before it could be counted as such were held invalid.  Based on Ragsdale and McGregor, Sheriff Strain was not required to give Downey notice in July 2003 in order for the second absence to be counted as FMLA leave.

In her second argument, Downey claims that Sheriff Strain's failure to provide her with notice prior to the second absence interfered with her FMLA rights.  She reports that, although she re-injured her left knee on June 18, 2003, she continued to work without restrictions in the crime lab until the second surgery.  She contends that if she had been notified that the leave for the second surgery would jeopardize her position in the crime lab, she would have postponed her second surgery or she would have returned to the crime lab before the expiration of her FMLA leave.

As of June 18, 2003, Downey had 56 hours of FMLA leave available through December 28, 2003.  Eight of these hours were used on July 9, 2003, leaving 48 hours or six work days.  It is undisputed that after the July 31, 2003 surgery, Downey was not able to return to crime lab duties any earlier than October 6, 2003, when her doctor cleared her to return to her full duties.  The only issue is whether she could have postponed the surgery from July 31, 2003 until December 22, 2003[7] at which time a new twelve month cycle would start with 480 more hours of available FMLA leave.[8]  Sheriff Strain did not reply to this issue.

---

[7]Computed by the anniversary date of December 29, plus the remaining six work days.

[8]From July 30, 2003 through October 3, 2003, she only used 376 hours of leave.  It must be presumed that if she had delayed the surgery until December 29, 2003, she would have been able to return to her full duties in the crime lab after the exhaustion of 376 hours of FMLA leave and still have more than 100 hours left for later use.

It is unlawful for an employer to interfere with, restrain, or deny the existence of an employee's substantive FMLA rights. 29 U.S.C. § 2615(a)(1). The statute requires that an employer provide notice to its employees of its FLMA obligations by posting pertinent FMLA provisions in conspicuous places. Id. at § 2619(a). The regulations require additional notice. See Ragsdale, 122 S.Ct. at 1160-61. However, the employee must demonstrate that she was prejudiced by the employer's violation of the notice requirement.[9] Id. at 1161.

In Ragsdale, the plaintiff argued that the notice regulations were necessary because an employer's failure to comply with them might sometimes burden an employee's exercise of her substantive FMLA rights. Id. at 1161. The example cited concerned the right under 29 U.S.C. § 2612(b)(1) to intermittent leave when medically necessary. In the absence of notice of this right, the employee might take all of the twelve weeks at one time when it may only be medically necessary to take a week or two at a time. Id. at 1161-62. The plaintiff argued that in such circumstances the failure to provide the notice could be said to deny, restrain or interfere with the employee's exercise of her right to take intermittent leave. Id. The Supreme Court responded that, "[t]his position may be reasonable, but the more extreme one embodied in . . . [the regulation] is not." Id. at 1162. In Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135 (3rd Cir. 2004), an employee argued that the employer's failure to advise him of his right to twelve weeks of FMLA leave after he gave notice of his serious health condition, constituted an interference with his FMLA leave rights. Id. at 143-43. The Third Circuit found that this was a viable theory of recovery, which was

_____

[9] In finding the penalty provision invalid, the Supreme Court found that the penalty was unconnected to any prejudice the employee might have suffered from the employer's lapse. 122 S.Ct. at 1161.

available under <u>Ragsdale</u>.  <u>Id</u>. at 144.  It said:

> This portion of the <u>Ragsdale</u> opinion, together with our own assessment of the reasonableness of the notice regulations, persuades us that the Supreme Court would find an actionable "interference" in violation of § 2615(a) here in the event Conoshenti is able to show prejudice as a result of that violation.

364 F.3d at 144.

In order to show prejudice Downey must be able demonstrate that:  (1) she could have delayed the surgery from July 31, 2003 until December 22, 2003; (2) during this period she would have been able to perform her full crime lab and duties during that period; and (3) it would not have been necessary for her to take any FMLA leave during this period.[10]  In the absence of such evidence there would be no prejudice to her in not receiving FMLA notice for the second absence.  The fact that Downey was able to work in the crime lab from June 18, 2003 when she re-injured her left knee, until June 30, 2003 at least raises an inference that she might have been able to delay the surgery further.  The court must draw all inferences in the light most favorable to Downey.  Sheriff Strain's motion must be denied as to plaintiff's FMLA claim that she was prejudiced by the failure to provide her with notice that the second absence would be counted as FMLA leave.  All other FMLA claims must be dismissed.

IT IS ORDERED that Sheriff Strain's motion for partial summary judgment on Downey's Family & Medical Leave Act claims (Rec. doc. 26) is GRANTED in PART and DENIED in PART in accord with the terms of this order.

New Orleans, Louisiana, this 6th day of December, 2005.

**SALLY SHUSHAN**
**United States Magistrate Judge**

---

[10]Or if she did, the time would not have exceeded the 48 hours she had remaining as of July 30, 2003.